Matthias, J.
The rights of the appellant insurance companies being those of subrogees can rise no higher than those of the lessor subrogor, and thus in determining this action we must consider the rights, if any, the lessor has against the lessee.
The primary question raised by this appeal is whether a provision in the surrender clause of a lease, excepting therefrom “loss by fire,” relieves the lessee from his common-law liability to the lessor for damages resulting from fire caused by the lessee’s own negligence.
The provision in the lease, with which we are concerned, reads as follows:
“That lessee will deliver up and surrender to the. lessor *87 possession of the premises hereby leased upon the expiration of this lease or its termination in any way, in as good condition and repair as the same shall be at the commencement of said term (loss hy fire and ordinary wear and decay only excepted).” (Emphasis added.)
We are thus directly confronted with the question as to what the parties intended by the phrase, “loss by fire * * * excepted. ’ ’
It is a fundamental principle of law that a court in construing a written instrument must give words their common, ordinary and usual meaning, unless required to do otherwise by the instrument itself.
The term, “loss by fire,” has, when considered in relation to policies of fire insurance, a definite meaning. As it is used in such policies the usual and ordinary meaning of such term is damage resulting from fire caused by act of God, accident or negligence.
Clearly, to the ordinary man, the phrase, “loss by fire,” means just that — loss by fire caused in any manner other than by his own arson.
As was said by the court in General Mills, Inc., v. Goldman, 184 F. (2d), 359, 366, “it is very clear in the light of all the provisions of the lease, the circumstances of its execution and the understanding about fire insurance coverage to which the lease was related that by the provision that on termination of the lease the tenant should return the property in good condition ‘loss by fire * * * excepted’ the parties meant a loss by fire such as is always meant when men are talking about or figuring on the risk of it in business dealings, i. e., the ‘loss by fire ’ which always is insured against in ordinary course and against which the landlords here intended to and take out insurance in an amount greater than the owners’ investment.”
However, in the construction of any written instrument the primary duty of the court is to determine and give effect to the intention of the parties.
To determine such intention here, we must examine the various provisions of the lease to see whether the parties intended to limit the meaning of the phrase, “loss by fire,” or intended in fact to relieve the lessee from its common-law liability.
*88 Considering first the surrender clause in which such phrase is incorporated, we find that the complete phrase is “loss by fire and ordinary wear and decay only excepted.” Thus it is apparent upon the face of the lease that, although the parties qualified the exception as to wear and decay to mean ordinary wear and decay, they made no such qualification as to loss by fire. The lease does not say loss by ordinary fire or non-negligent fire, but merely loss by fire, with no qualification or limitation. The parties, had they so desired, could easily have qualified such provision as they did with “wear and decay.” The parties having directly qualified a part of the exception, their failure to do so with the remainder indicates that their apparent intent was to put no qualification or limitation on fire losses. In other words, they apparently intended to relieve the lessee from liability for any fire loss.
That the parties understood the qualifications as to negligence is clearly shown by the provision in the lease, relating to destruction of the leased premises, wherein it is provided that, “if the said premises shall without fault or neglect on lessee’s part be destroyed or so injured by the elements or other cause as to be unfit for occupancy and such destruction or injury could reasonably be repaired within thirty (30) days,” such repairs shall be made by the lessor. Here the parties clearly provided for a situation involving negligence.
The following further provision in the lease clearly indicates that the purpose of such clause was to relieve the lessee from liability for loss by fire, without any qualifying exceptions:
“In the event that the fire insurance rate on the building on the above demised premises shall be increased by reason of lessee’s occupancy thereof, over and above the fire rate fixed for the lessor’s previous use and occupancy thereof, then the lessee shall pay to the lessor the additional premium by reason of such increase in insurance rate for the unexpired portion of the term of the within lease on only so much of the principal amount of the fire insurance coverage on said building as does not exceed $75,000. Such additional premium shall be paid to the lessor upon its demand and upon its submission to the lessee of the proper evidences indicating such increase in rate.”
It is clear from this provision that the parties recognized that lessee’s business was much more dangerous and hazardous *89 in regard to fire than that of the previous user, and that there was a distinct possibility that fire insurance rates would be increased under the lessee’s use. Thus, in the event of such an increase, lessee agreed to pay the increased cost of insurance. Clearly under this section of the lease it was contemplated that the lessor would carry insurance on the property and look to the insurance for compensation for any loss by fire. If the parties had intended otherwise, there would have been no reason for such provision.
The record shows that there was an increase in premiums, and that lessee paid such increase.
Thus, considering the lease as a whole and in particular those provisions relating to destruction and insurance and the fact that the phrase, ‘ ‘ loss by fire, ’ ’ is unqualified and unlimited, it is apparent that under the circumstances of this case the parties intended to relieve the lessee from its common-law liability to the lessor for loss by fire.
The rights of the appellant insurance companies being those of subrogees and rising no higher than those of the lessor, the lessor having released the lessee from liability, it follows that the judgment of the Court of Appeals is correct, end it is affirmed.

Judgment affirmed.

Weygandt, C. J., Zimmebman, Stewabt, Bell and Taet, JJ., concur.